UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

NIPPONKOA INSURANCE CO., LTD., U.S. :
BRANCH,                                              08 Civ. 1302 (PAC)
                                         :
             *Plaintiffs,*
  - against -                          :

NORFOLK SOUTHERN RAILWAY                 :
COMPANY,

             *Defendant.*         :

------------------------------------x

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO TRANSFER PURSUANT
TO 28 U.S.C. 1404(a)**

David T. Maloof
Thomas M. Eagan
Maloof Browne & Eagan LLC
411 Theodore Fremd Avenue, Suite 190
Rye, New York 10580-1411
Tel: (914) 921-1200
Fax: (914) 921-1023
Email: dmaloof@maloofandbrowne.com
teagan@maloofandbrowne.com

Attorneys for Plaintiffs NipponKoa Insurance Co., Ltd. U.S. Branch

# TABLE OF CONTENTS

                                                                                                       **Page**

**STATEMENT OF FACTS**......................................................................1
As already found by Judge Chin in a recent similar case, Norfolk Southern's Motion has nothing to do with convenience of witnesses and everything to do with forum shopping.

**ARGUMENT**............................................................................................7

    **I:** IN CHOOSING TO RUN A RAIL ROUTE IN THE SOUTHERN DISTRICT OF NEW YORK, DEFENDANTS HAVE ADDED TO THEIR BURDEN IN OPPOSING THIS FORUM................................7

    **II:** EVEN WITHOUT A STATUTORY FORUM SELECTION CLAUSE, OBTAINING A 1404(a) TRANSFER IS SUBJECT TO A BALANCING OF SEVERAL OBJECTIVE FACTORS............................8

    **III:** THE NORFOLK SOUTHERN DEFENDANTS CANNOT MEET THE 1401(A) BALANCING TEST.................................................9

A: THE CONVENIENCE OF THE PARTIES, INCLUDING THE FACT THAT PLAINTIFFS HAVE SUED IN THEIR "HOME STATE," STRONGLY SUPPORTS VENUE HERE.....................................................9

B: THE CONVENIENCE OF THE WITNESSES DOES NOT SUPPORT ANY ONE PARTICULAR VENUE ......................................................................................10

C: DOCUMENTARY PROOF IS AVAILABLE BY SUBPOENA REGARDLESS OF WHERE THE CASE IS VENUED...................................................................13

D: DOCKET CONGESTION, TRIAL EFFICIENCY, AND FINANCIAL MEANS ARE NOT FACTORS.........................13

E: THE INTERESTS OF JUSTICE STRONGLY SUPPORT NEW YORK AS THE FORUM...............................................14

**CONCLUSION**.......................................................................................15

DAVID T. MALOOF (DM 3350)
THOMAS M. EAGAN (TE 1713)
MALOOF BROWNE & EAGAN LLC
411 Theodore Fremd Avenue, Suite 190
Rye, New York 10580-1411
(914) 921-1200
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| NIPPONKOA INSURANCE CO., LTD., U.S. BRANCH, | : |
| | : **08 Civ. 1302 (PAC)** |
| *Plaintiffs*, | : |
| - against - | : |
| NORFOLK SOUTHERN RAILWAY COMPANY, | : |
| *Defendant.* | : |
| | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO TRANSFER PURSUANT
TO 28 U.S.C. 1404(a)**

Plaintiff NipponKoa Insurance Company Limited, US Branch ("NipponKoa") by and through its attorneys, Maloof Browne & Eagan LLC, respectfully submit this Memorandum of Law in opposition to Defendant Norfolk Southern Railway Company's ("Norfolk Southern"), Motion to Transfer this action to the Southern District of Ohio pursuant to 28 U.S.C. Section 1404(a).

**STATEMENT OF FACTS**

The pending motion has nothing to do with the convenience of witnesses, and everything to do with forum shopping on the part of the Defendants.

Plaintiff NipponKoa Insurance Co., Ltd., US Branch has its principal offices in the Southern District of New York, and suffered the financial loss involved in the Southern District of New York, and it is in the Southern District of New York that the persons who investigated this loss and know the most about the damages in question are located.

Beyond that, this claim involves a typical series of international shipments touching numerous states as to which New York, being the hub of the nation's transportation services industry, has the most sophisticated body of law and thus is often chosen as the legal forum of default.[1]

Indeed, over a period of sixteen years, between 1990 and July 2006, a review of data from the Pacer website reveals that some fifty-four lawsuits were field against the Norfolk Southern Railway Company in the Southern District of New York involving shipments and damages occurring throughout the United States, and only two cases were transferred to other districts. *See* Summary of docket sheets from cases filed against Norfolk Southern in the SDNY, Exhibit 3 to the Eagan Affidavit. Thus, for a period of a decade and a half, Norfolk Southern Railway, which runs its routes up and down the East Coast, and having purchased Conrail,

---

[1] This Court can take judicial notice that just as New York is the financial services center of America, it is also the transportation services center of America. For example, there are more transportation service providers located in the New York Metropolitan area than any other region of the country, by a wide margin: and there are more major U.S. marine insurance departments (at least 27 out of 49) headquartered in the New York Metropolitan area than any other region of the country, by a wide margin. In support of the foregoing, we attached hereto the following: Exhibit 1 to the Eagan Affidavit: The Tables of Contents to the Four Volumes of the 2006 Transportation Telephone Tickler published by the Journal of Commerce, showing that the New York area entries alone run to 432 pages, out of a total 2324 pages. Put simply, the New York Metropolitan area transportation services entries constitute about 20% of the entries for the entire country (also available at www.ticklkeronline.com); and Exhibit 2 to the Eagan Affidavit: The names of the members of the American Institute of Marine Underwriters, with their addresses identified (also available at www.aimu.org).

further runs numerous routes through this District and state,[2] rarely considered that there was much inconvenience in taking advantage of the transportation law expertise of the fine Judges who populate this Courthouse.

In contrast, commencing in August 2006, of 7 cases filed in the Southern District of New York against Defendant Norfolk Southern (counting this one), Norfolk Southern has moved or otherwise succeeded in transferring 4 out of this Circuit. *See* Exhibit 3 to the Eagan Affidavit.[3]

Why did Norfolk Southern suddenly determine, commencing in August 2006, that the Southern District of New York was no longer a convenient forum for its cases to be heard? On July 10th, 2006 the Second Circuit Court of Appeals decided *Sompo Japan Insurance Company v. Union Pacific Railroad Company*, 456 F. 3d 54 (2d Cir. 2006).[4]

Sompo corrected an oversight -- actually caused by a typo -- wherein numerous Circuits including the 6th Circuit[5] (which encompasses the Southern District of Ohio, defendant's requested venue) had for many years permitted railroads like Norfolk Southern who had damaged cargo through their negligence, or gross negligence, to limit their liability to a small percentage of the harm that they caused their customers (or avoid liability altogether). This

---

[2] For a map of Norfolk Southern's current routes, *see* Exhibit 4 to the Eagan Affidavit, also available on their website at http://www.nscorp.com/nscportal/nscorp/map.html.

[3] One case was transferred into the Southern District of New York on another party's motion but Norfolk Southern had not yet been served when the motion was made and was not involved with it. It is also not clear if any *Sompo*/package limitation issues were involved in that case.

[4] The undersigned was counsel in *Sompo*. For a concise history of the case and its progeny the Court may find of interest the enclosed paper "The Sompo Decision: A Look Back into the Future of Intermodal Claims," which was delivered at the United States Maritime Association's Annual Convention in Sanibel, Florida on October 24th, 2007 (Exhibit 5 to the Eagan Affidavit).

[5] The leading case in the Sixth Circuit is *American Road Service Company v. Consol. Rail Corp.*, 348 F.3d 565 (6th Cir. 2003), which follows the ill-decided *Swift Textile v. Watkins Line*, 799 F.2d 697 (11th Cir. 1986), whose ultimate holding was heavily criticized by the Second Circuit in *Sompo*: as based on a typo: "[T]he Court's articulated holding is **fatally flawed**." 456 F.3d at 61. (emphasis added).

3

skirting around the Carmack Amendment likewise provided railroads litigants with defenses and litigation strategies never intended by Congress. In contrast, in the Second Circuit under *Sompo* full Carmack liability (i.e. strict liability without limitation) applies to the inland U.S. rail loss under a thorough bill of lading until the shipper is specifically offered the opportunity to opt out of Carmack (which was not done here).

In addition, in November 2007 in a train derailment case virtually identical to this one, and involving the same counsel on both sides, *Sompo Japan v. Norfolk Southern*, 07civ2735 (S.D.N.Y.), Judge Chin denied Norfolk Southern's identical motion to transfer, on nearly identical facts, finding that the motivation to change venue was the law and not the convenience of witnesses. "I think clearly a substantial part of the defendants' desire to move is the law…the motivation here's not the convenience of the parties or the witnesses, the motivation is the law." *Sompo Japan v. Norfolk Southern*, 07 Civ. 2735 (November 21, 2007, Tr 20) (Exhibit 6 to the Eagan Affidavit).

Here is the bottom line: Norfolk Southern wants to avoid the two *Sompo* decisions and transfer the case to Ohio where it believes the law is decidedly more favorable to it. Because the *Sompo* Court caught that judicial typo, if this case is heard in the Second Circuit, Carmack will govern. If however, this case is heard in the Sixth Circuit (wherein the Southern District of Ohio sits), and the Sixth Circuit does not correct its prior typo, various alternative legal schemes could apply.

First, Norfolk Southern could request that the Sixth Circuit deem the Bill of Lading the controlling agreement between the parties. Clause 29 of the Bill of Lading effectively states that COGSA should govern the entire through-transport. *See* Exhibit 7 to the Eagan Affidavit. The *Sompo* Court, however, expressly rejected this approach: "we hold that the

4

contractual provision extending COGSA's terms inland must yield to Carmack." *Sompo Japan Insurance Company v. Union Pacific Railroad Company*, 456 F. 3d 54, 73 (2d Cir. 2006). The reason is that Carmack is strict liability based, whereas COGSA is negligence based:

> "Because COGSA and Carmack create two different liability standards, we cannot assume that the shipper contracting with Union Pacific had the opportunity to choose among several types of liability coverage and opted not to pay a higher freight rate for full coverage under a strict liability rule. (*Id.* at 76)"

Consequently, the Sixth Circuit could very well apply the bill of lading as the governing body of law and effectively render Plaintiff's rights under Carmack null and void.

Second, Norfolk Southern could argue in the Sixth Circuit that its Rail Circular is the controlling agreement, thereby triggering various changes in the governing law. *See* Exhibit 8 to the Eagan Affidavit. Pursuant to the Rail Circular, Norfolk Southern maintains that it can only be liable to the "Rail Services Buyer."-- which Norfolk Southern contends is MOL Lines (*Id.* at Section 8.3.3(j)). If the Sixth Circuit adopts Norfolk Southern argument instead of Congress's statutory Carmack standard, Plaintiff could effectively lose standing altogether.

Furthermore, pursuant to Section 8.3.3(d) of the Circular, Norfolk Southern could argue that instead of Carmack's strict liability standard, a comparative negligence defense should apply. *Id.* Finally, the Rail Circular states that Norfolk Southern will not be liable for interest on damages. *Id.* at 8.3.3(e). In allowing parties to recover interest, Congress and the courts recognize the importance of expediting cargo claims. *See, e.g., Gardner v. Mid-Continent Grain Co.*, 168 F.2d 819, 824 (8th Cir. 1948). Based on all of these factors, it is easy to see why Norfolk Southern is seeking to transfer out of the Second Circuit: the law, in numerous respects, is plainly more favorable to their interests outside of this venue.

Notwithstanding the foregoing, Defendant contends that although venue is proper in the Southern District of New York, the location of a few witnesses in this case makes it too inconvenient for the matter to proceed here. The relevant witnesses in this matter are, however, located in at least seven different locales:

- New York: The claim was adjusted in New York where NipponKoa, US Branch is based.

  MOL Lines, who issued the intermodal bill of lading, is based in the New York Metropolitan area.

- Japan: The manufacturer is located in Japan and has knowledge of good order and condition of the cargo at the time of shipment.

  The loading personnel of MOL Lines at the Japan port have knowledge of facts and conditions at time of loading.

- California: The containers were discharged in Long Beach by MOL and delivered to Norfolk Southern. Witnesses regarding good order and condition of the cargo are in California.

- Norfolk, VA: The Norfolk Southern employee identified in the claim file is Debbie Thompson – who is based in Norfolk, Virginia (Damage Prevention Manager). Norfolk Southern's Director of Claims (James Vevenha) and General Manger of Claims (Robert A. Weber) are also based in Norfolk. Thus, contrary to Norfolk Southern's assertions, their witnesses appear to be in Virginia not Ohio.

- Worldwide: The Master and Crew of the vessels which carried the goods from Japan to California.

- Ohio: The consignee is located here. The derailment took place here. The file contains an Norfolk Southern "Incident Report" which admits the cause was "Joint Bar broke under movement due to prior fatigue cracking" and that the maintenance responsibility was Norfolk Southern's. Since Carmack is basically a strict liability statue (only limited defenses) and the cause of the derailment is admitted, <u>there would not be any real liability issues involving Ohio.</u>

# ARGUMENT

## I

## IN CHOOSING TO RUN A RAIL ROUTE IN THE SOUTHERN DISTRICT OF NEW YORK, DEFENDANTS HAVE ADDED TO THEIR BURDEN IN OPPOSING THIS FORUM

Plaintiffs ask this Court to take note that Congress has already spoken on the subject of which forums shall be deemed "convenient" for a Plaintiff to sue a delivering railroad in this country. Thus, in passing the Carmack Amendment, 49 U.S.C. §11706, Congress determined that any "delivering" railroad in this country, by virtue of the privilege granted to it (actually the oligopoly granted to it-- *see* Exhibit 9 to the Eagan Affidavit), agrees to make itself accessible to suit in the following locale:

> "(2)(a) A civil action under this section may only be brought--
>
> \*     \*     \*
>
> ... (ii) against the delivering rail carrier, in the judicial district in which the principal place of business of the person bringing the action is located if the delivering carrier operates a railroad or a route through such a judicial district."

49 U.S.C. §11706 (d) (2) (A).

The Southern District of New York is admittedly a District where Norfolk Southern runs routes (*see* footnote 2, *infra*). Congress has thus mandated that a cargo plaintiff may rightfully sue in this District. Consequently, while the Carmack Amendment's forum selection provisions do not entirely nullify the 1404(a) transfer motion, Defendants, by agreeing to operate under that statute, have added to their burden in seeking transfer for purposes of "convenience."

To overcome this steep burden, the Defendant must establish that a trial in the contractual forum will be "so gravely difficult and inconvenient" that he or she will for all

7

practical purposes be deprived of his or her day in court. *Orix Credit Alliance, Inc., v. Brown,* 1994 WL 392240 (S.D.N.Y. 1994) (*quoting M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 18, 92 S. Ct. 1907, 32, 32 L. Ed. 2d 513 (1972)).

## II

### EVEN WITHOUT A STATUTORY FORUM SELECTION CLAUSE, OBTAINING A 1404 (a) TRANSFER IS SUBJECT TO A BALANCING OF SEVERAL OBJECTIVE FACTORS

Defendants move to transfer this matter exclusively under 28 U.S.C. 1404(a), which provides:

> "... for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Pursuant to this provision, the moving party must first show that the case could have been bought in the proposed transferee forum. That is not disputed here. Thereafter, the Court must weigh several factors:

> "[...] the convenience of witnesses, the convenience of parties, the locus of operative facts, the location of relevant documents and relative ease of access to sources of proof, the availability of process to compel the attendance of unwilling witnesses, the forum's familiarity with governing law, the relative financial means of the parties, docket congestion and trial efficiency, and the interests of justice generally."

*Prudential Securities, Inc. v. Norcom Development, Inc.,* 1998 WL 397889, at *3 (S.D.N.Y. 1998). *See generally Gulf Oil Corp., v. Gilbert,* 330 U.S. 501 (1947); *Don King Productions, Inc., v. Douglas,* 735 F. Supp. 522 (S.D.N.Y. 1990).

## III

## THE NORFOLK SOUTHERN DEFENDANTS CANNOT MEET THE 1404 (a) BALANCING TEST

A review of the 1404 (a) factors illustrates there is not one single factor that supports transfer in this case.

### A. The Convenience Of The Parties, Including The Fact That Plaintiffs Have Sued In Their "Home State," Strongly Supports Venue Here

Here, the Plaintiff suffering losses of about $280,000, NipponKoa Insurance Company, Limited, U.S. Branch, is headquartered in New York, and thus by definition has its "home" in New York for purposes of this motion.[6]

As explained above, this factor strongly weighs in favor of New York as the proper forum. Furthermore, "even where the Plaintiff is not a resident of the chosen forum, his choice [of forum] is still entitled to significant weight," *Motown Records v. Mary Jane Girls, Inc.*, 660 F. Supp. 174, 175 (S.D.N.Y. 1987). *See also Schwartz v. R.H. Macy's Inc.*, 791 F. Supp. 94, 95 (S.D.N.Y. 1992); *Leasing Service Corporation v. Scott Crane Company*, 1984 WL 1004 (S.D.N.Y. 1984). *See also Steinberg & Lyman v. Takacs*, 690 F. Supp. 263, 266 (S.D.N.Y. 1988); *Reciprocal Merchandising Services v. All Advertising Associates, Inc.*, 1990 WL 52293 (S.D.N.Y. 1990).[7]

Moreover, where, as here, the Plaintiff has sued in his or her "home" state, the choice is then entitled to "great deference." *Piper Aircraft v. Reyno*, 454 U.S. 235 (1982), *reh. denied*, 455 U.S. 928 (1982); *Astor Holdings, Inc., v. Roski*, 2002 WL 72936 at *14 (S.D.N.Y.

---

[6] The Defendant, NSRC is a corporation organized under the laws of the Commonwealth of Virginia with its principal places of business in Norfolk, Virginia.

[7] In the interest of not reinventing the wheel, some of the string citations in this memo have been simply taken from the excellent reference work *M. Silberberg, et. al., Civil Parties in the Southern District of New York* (2nd Ed. 2006), § 10:19-10:25 (after being checked for accuracy).

9

2002) (citing cases); *Kelly v. M.D. Buyline*, 2 F. Supp. 2d 420 (S.D.N.Y. 1998); *Hall v. South Orange*, 89 F. Supp. 2d 488, 494 (S.D.N.Y. 2000); *ZPC 2000, Inc. v. SCA Group, Inc.*, 86 F. Supp 2d 274, 280 (S.D.N.Y. 2000).

To overcome that great deference, defendants bear a "heavy burden." *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978); *Citicorp Intern. Trading Co., Inc. v. Western Oil & Refining Co.*, 708 F. Supp. 86, 89 (S.D.N.Y. 1989). The Defendant must make a "clear-cut showing" that transfer is in the best interest of the litigation. *Schieffelin & Co. v. Jack Co. of Boca, Inc.*, 725 F. Supp. 1314, 1321 (S.D.N.Y. 1989). The need for transfer must be "clear and convincing." *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Steckler*, 657 F. Supp. 930 (S.D.N.Y. 1987).

Indeed, even where New York is not that Plaintiff's primary place of business in the world, but it "does conduct business here," and the conduct of said business is partly a subject of the pending action, the Plaintiff's choice still "weighs" on the Court. *Pinto v. Doskocil*, 1991 WL 207523 (S.D.N.Y. 1991).

### B. The Convenience of The Witnesses Does Not Support Any One Particular Venue

As set forth in detail above, there are important witnesses located in the New York Metropolitan area. In addition to New York, there are also witnesses in California, Virginia, Ohio, and Japan.

At least three witnesses based in the New York Metropolitan area are as vital as any other witnesses in the case. Sharon Morrison and Jack Hilferty are the NipponKoa personnel most knowledgeable about the claims at issue in this litigation. *See* the Declaration of Sharon Morrison, Exhibit 10 to the Eagan Affidavit. Furthermore, MOL Lines, who issued the intermodal bill of lading, is likewise based in the New York Metropolitan area. *See* MOL Bill of

Lading, Exhibit 7 to the Eagan Affidavit.

In this case, the Defendant relies on the fact that the derailment occurred in Ohio, notwithstanding the location of witnesses in numerous states as well as a foreign country. In fact, the Defendants have only specifically identified three potential witnesses and a surveyor located in Ohio and it is unclear from their papers whether said witnesses will actually provide testimony in this action, what their testimony would cover or why four witnesses are needed.[8] More specificity is required by them for these witnesses to even be considered. *See, e.g. Student Advantage Inc. v. International Student Exchange*, 2000 WL 1290585 (S.D.N.Y) ("A party seeking to transfer based on the convenience of the witnesses must provided the Court with a specific list of probable witnesses who will be inconvenienced by the current forum and a general statement of what the witnesses' testimony will cover.")

Defendant's motion fails to mention that key Norfolk Southern employees are located in Norfolk, Virginia. Norfolk Southern's Damage Prevention Manager (Debbie Thompson), Director of Claims (James Vevenha), and General Manager of Claims (Robert A. Weber) are all based in Virginia. Thus, contrary to Defendants assertions, their primary witnesses appear to be in Virginia not Ohio.

Faced with this kind of pleading, this Court need not even consider this as a factor. *Factors Etc., Inc., v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978) (holding that moving party must "clearly specify key witnesses to be called and must make a general statement of what their testimony will cover."), *cert. den'd*, 440 U.S. 908 (1979); *Dealtime.com v. McNulty*,

---

[8] Guy Wofenburger, Rick Dudicks, and Gene Taylor are allegedly witnesses present in Ohio who saw the cargo when it arrived in damaged condition. Why they would need to testify at all when the parties already have photographs regarding the damaged cargo is unclear. All the witnesses would be doing is describing the damaged cargo that they saw—which the photographs already do even more adequately. *In fact, if any of these witnesses' testimony becomes necessary in this action, Plaintiff agrees to conduct their depositions by telephone.*

11

123 F. Supp. 2d 750, 755 (S.D.N.Y. 2000). *See generally, Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 239 n.26 (1982) (noting that requirements under §1404(a) sometimes differ from lesser requirements where dismissal is sought under *forum non conveniens*). Defendants have not explained why several Ohio witnesses could not either be flown to New York[9] or deposed in Ohio by telephone.

Courts in this District, served by four major airports, are increasingly finding that the burden of domestic travel for a few witnesses is not enough alone to warrant transfer. *See Burlington Industries, Inc. v. Salem Intern. Co.*, 645 F. Supp. 872, 876 (S.D.N.Y. 1986) (denying transfer to Virginia, rejecting defendant's argument that defending in New York would burden defendants, noting that "the airplane trip to this district from defendants' office or homes in of short duration, with planes conveniently leaving Washington for New York on a frequent basis during the day and available for return at a like schedule"). This especially true where, as here, the Defendants and the one surveyor identified is from a survey firm which already has in place "an extensive national network"[10] and are thus routinely engaged in constant travel to major cities like New York anyway. *Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000). Put simply: "A [two] hour plane ride for a few witnesses" is not the kind of inconvenience that merits a transfer. *Kelly v. MD Buyline, Inc., supra*, 2 F. Supp. 2d 420, 422, n. 9 (S.D.N.Y. 2002). *See, e.g., Manu Intern., S.A., v. Avon Products, Inc.*, 641 F.2d 62, 65 (2d Cir. 1981). *See also Schechter v. Tauck Tours, Inc.*, 17 F. Supp. 2d 255, 261 (S.D.N.Y. 1998) ("the Court is obliged to exercise some common sense in the matter rather than simply to apply

---

[9] The Court can take judicial notice that flights from Ohio to NY round trip are $329.50 on American Airlines (available at www.expedia.com).

[10] The cargo survey firm, Vericlaim, Inc., has a national network, as well as offices located in the New York area. *See* Exhibit 11 to the Eagan Affidavit, excerpt from Vericlaim, Inc.'s website. Judge Chin thus rejected the location of a surveyor as a factor in *Sompo Japan v. Norfolk Southern, supra*.

12

mechanically a supposed requirement of names of witnesses and summaries of testimony"). The fact that these days even trial testimony of out of state witnesses can be taken by electronic transmission has also been cited as a factor in denying transfer. *Duncan v. International Business Machines,* 1996 WL 720106 (S.D.N.Y. 1996).

Since witnesses are located in both New York and Ohio, this factor tips in favor of no one particular place.

### C. Documentary Proof Is Available By Subpoena Regardless of Where The Case Is Venued

There is a modest amount of documentary evidence in this case-- perhaps in total one to two file boxes. The documents are located in the same cities and countries as the respective witnesses. All of the U.S. documents can be easily subpoenaed.

This factor does not support transfer.

### D. Docket Congestion, Trial Efficiency, And Financial Means Are Not Factors

Presently, all but two vacancies in the Southern District of New York are permanently filled. Moreover, cargo cases like this one are normally resolved in 4-6 months, and if necessary, can normally be tried in 2-3 days (quite a rare event for a cargo case, which, as the Court can take judicial notice of, settle at a very high rate). The likelihood of settlement is a recognized factor that mitigates against transfer. *In re Hanger Orthopedic Group, Inc,. Securities Litigation,* 418 F. Supp. 2d 164, 170 (E.D.N.Y. 2006) (noting that class action cases also routinely settle). This is a non-jury case. All parties are profitable corporations. Where judicial appointments are filled, Court congestion is not a factor. *Guidi v. Inter-Continental Hotels Corp.,* 224 F.3d 142, 147, n. 5 (2d Cir. 2006). These factors thus do not support transfer.

13

### E. The Interests of Justice Strongly Support New York As The Forum

Finally, the interest of justice strongly supports New York as the forum. Defendants are engaged here in blatant forum shopping -- in search of a complete change in the law from that which exists in the Second Circuit -- using a legal loophole -- or more specifically, a long-standing legal "typo" (*see* legal discussion in *Sompo Japan Insurance Corporation of America v. Union Pacific Railroad*, 456 F.3d 54 (2d Cir. 2006) at 62-63, and in MLA paper, Exhibit E to Eagan Declaration).

Under these circumstances, binding U.S. Supreme Court precedent prevents transfer. In *Van Dusen v. Barrack*, 376 U.S. 612 (1964), the Supreme Court ruled that a §1404(a) transfer should never result in a change in the applicable law. Specifically, the Court in *Van Dusen v. Barrack* held that Congress, in passing that statute could not have intended a transfer to be accompanied by a change in law, *Id.* at 622, and cited lower court precedents rejecting a transfer on that basis. *Id.* at 630, n.36. Defendants should not be allowed to intentionally transfer this case to a place where Plaintiffs rights will be decided by a "typo." This factor strongly supports maintaining New York as the forum. Where a movant is engaged in forum shopping to obtain more favorable law, such tactics will not be rewarded. *Jordache Enterprises, Inc., v. Brobeck, Phleger & Harrison*, 1994 WL 74860 (S.D.N.Y. 1994).

## **CONCLUSION**

Plaintiff respectfully requests that this Motion to Transfer be denied.

Dated: Rye, New York  
June 6, 2008

MALOOF BROWNE & EAGAN LLC

By: s/ _____
David T. Maloof (DM 3350)
Thomas M. Eagan (TE 1713)
411 Theodore Fremd Avenue, Suite 190
Rye, New York 10580-1411
Tel: (914) 921-1200 Fax: (914) 921-1023
*Attorneys for Plaintiffs*

F://WP-Docs/1415.32/052008 Memo of Law in Opp to Motion to Transfer.doc