Jeffrey D. Cohen, Esquire (*pro hac vice*)
KEENAN COHEN & HOWARD P.C.
One Pitcairn Place, Suite 2400
165 Township Line Road
Jenkintown, PA 19046
Telephone: (215) 609-1110
Facsimile:  (215) 609-1117

*Attorneys for Defendant*
*Norfolk Southern Railway Company*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NIPPPONKOA INSURANCE CO., LTD., U.S. BRANCH,<br><br>*Plaintiff,*<br><br>- against -<br><br>NORFOLK SOUTHERN RAILWAY COMPANY,<br><br>*Defendant.* | **NO.: 08 CIV. 1302**<br><br>**JUDGE SAND**<br><br>**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. 1404(a)** |

**INTRODUCTION**

Plaintiff's opposition to Norfolk Southern Railway Company's ("Norfolk Southern") Motion to Transfer fails to recognize a major and somewhat unique fact which eliminates the application of the COGSA $500 per package limitation in New York, Ohio or anywhere else for that matter. This fact is that there were thousands of "packages" involved with this transportation. The COGSA limitation of liability has no application to this case. Plaintiff's primary argument against transfer, that Norfolk Southern is forum shopping, is thus exposed as being completely without merit.

Plaintiff's New York counsel's opposition brief filed with this Court in this case is essentially identical to another brief that they recently filed on behalf of a different insurance

carrier in a case pending before Judge Chin of this Court.[1] Quite significantly, however, the brief in this case fails to recognize, or even mention, the major factual difference related to the thousands of "packages" or the significant involvement of the surveyors and receiver of the freight in making qualitative determinations about the damage to the freight. In the case for which the original opposition brief was drafted, there were only a few "packages" and the COGSA limitation of liability could have substantially reduced any award.

Plaintiff's opposition also fails to take into account the discussion which took place before Your Honor at the initial pretrial conference held on April 28, 2008. That discussion confirmed that the $500.00 per package limitation applicable under COGSA is of no value to Norfolk Southern in this case, because of the high number of packages involved. In fact, during discussions before Your Honor at the case management conference, counsel for Plaintiff, Thomas Egan, did not dispute that due to the high number of packages, application of the $500.00 per package limitation of COGSA would not reduce any recovery, as the value of the freight is less than the COGSA limit. Under these circumstances, it is simply nonsensical to argue that Norfolk Southern is forum shopping.

The motivation behind the Motion to Transfer is plainly stated in Norfolk Southern's original briefing. Simply put, this case has <u>absolutely nothing to do with New York</u>; the freight never moved through New York, and most relevant fact witnesses are located in Ohio. If forum

---

[1] Jude Chin chose to deny a motion to transfer venue; however, his reasoning is based, in large part, on his determination that "a substantial part of the defendants' desire to move is the law, the state of the law." Plaintiff's brief, in large part, focuses on Sompo Japan Insurance Co. v. Norfolk Southern Ry., 540 F.Supp.2d 486 (S.D.N.Y. 2008) and includes attachments related to analysis of this decision. All of this information about Sompo is completely irrelevant to the case before the Court, considering the COGSA package limitation would be of no benefit to Norfolk Southern due to the high number of packages involved. Plaintiff's brief suggests that Norfolk Southern wants to avoid the Sompo decision. As set forth above, this suggestion simply makes no sense. Carriers seek to avoid the application of the Carmack Amendment and seek application of COGSA for the package limitation. Here, it doesn't make a difference whether COGSA is applied or Carmack is applied because the package limitation of COGSA will not protect Norfolk Southern.

shopping is taking place, this forum shopping is being conducted by a very large insurance company, which happens to have lawyers in New York.

## ARGUMENT

A. **An Insurance Carrier's Choice of Forum That Lacks Any Connection to the Facts of the Case is to be Given no Weight at all in Assessing Transfer of Venue**

Plaintiff insurance company seeks to recover for alleged damage to its insured's freight that purportedly occurred as a result of a derailment which took place approximately 30 miles north of Columbus, Ohio when the freight was in rail transit to Columbus, Ohio. It is significant, especially within the context of venue, that the Plaintiff itself owned no freight, had no contracts with any rail carrier, and had no participation in arranging or transporting the freight at issue. As a result, Plaintiff has standing only in a representative capacity of their insured, through an insurance contract.[2]

Courts have long held that the absence of any contact by the forum state with the transactions underlying the cause of action greatly reduces the weight to be given to plaintiff's choice of forum. Transcontinental Service Corp. v. True Temper Corp., 319 F. Supp. 920, 922 (S.D.N.Y. 1970); Duplan Corp. v. Deering Milliken, Inc., 324 F. Supp. 102, 104 (S.D.N.Y. 1970). And when the plaintiff has filed suit in a representative capacity, such as an insurance carrier for damaged freight, this Court has held that plaintiff's choice of forum is not a controlling factor at all. Mitsui Marine and Fire Insurance Co. v. Nankai Travel Intl. Co., Inc., 245 F. Supp. 2d 523 (S.D.N.Y. 2003).

---

[2] Plaintiff's anecdotal subjective analysis of the number of insurance companies located in New York and the number of insurance company attorneys located in New York should have absolutely no bearing on any decision with respect to transfer of this case. This information is wholly irrelevant to the facts of this case. Other attachments to the Eagan Affidavit provided in the Opposition of Defendant's Motion to Transfer are equally irrelevant, as they address analysis of the Sompo decision.

3

Addressing the issue of insurance carriers manipulating venue to their own convenience (and the inconvenience of other parties and non-party witnesses), this Court has held:

> The weight accorded to a plaintiff's choice of venue is significantly diminished, however, where the operative facts have no connection to the chose district. *See 800- Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 134 (S.D.N.Y. 1994) ... The contract between Pilot and British Airways was executed at the defendant's warehouse in the Atlanta Airport. (Fearon Aff. P. 8). It was there that the cargo was tendered and an agent of British Airways took exception to the condition of the consignment. (Fearon Aff. P 9). At no time did the cargo enter or pass through the State of New York. (Fearon Aff. P 10). The only event that took place in New York was Royal's adjustment of Pilot's insurance claim. (Weigl Aff. PP 8, 9). Because the issue in dispute here bears little connection to New York, Royal's choice of forum must be afforded less weight.

Royal & Sunalliance v. British Airways, 167 F. Supp. 573, 577 (S.D.N.Y. 2001).

Occurrences and activity in Ohio will be the focus of Norfolk Southern's discovery. Specifically, the assessment of damage to the freight will be the main thrust of Norfolk Southern discovery efforts including depositions. The multiple surveyors located in Ohio who surveyed the freight at multiple locations within Ohio did much more than simply take pictures of the damage. These surveyors conducted a quantitative and qualitative analysis of the damage to the freight. Norfolk Southern intends to conduct discovery specifically related to both the quantitative analysis and, more important, the qualitative analysis of the damage to the freight. This qualitative analysis is summarized in a "quality report" attached as Exhibit A to the Declaration of Jeffrey D. Cohen. The quality report provides purported criteria used by the surveyors and consignee (both located in Ohio) to determine which pieces of freight were "Good" and which products were "Bad." If the product was outside of the original containers and/or distorted or was covered in dirt or other contaminants, the product was considered "Bad."

The remaining materials which were not considered bad were returned to Imasen Bucyrus Technology, Inc. in Columbus, Ohio ("IB Tech") for further evaluation.

A second inspection took place at IB Tech's facility in Columbus, Ohio. During this inspection, the quality report suggests that the product which was "extra sensitive" to handling damage was considered as "Bad," apparently without even opening the box. Additionally, the quality report suggests that at the second inspection the product which was outside of the containers, but was apparently not damaged, was also considered "Bad", apparently without testing the products in any way. Also, product which was "mildly sensitive" to handling damage were also considered "Bad" if the boxes showed "damage" causing the product to be outside of the allowable specifications. The quality report also indicates that "Good or Bad" determinations were based upon safety, performance, or reliability. It is not clear how the application of this analysis took place. Each of the subjective criteria applied at each survey in Ohio will certainly be the subject of Norfolk Southern's discovery in this case. There are no insurance claims adjusters in an office somewhere in New York City, who have first hand factual knowledge about any aspect of these surveys or the derailment. Suggesting that these insurance adjustors are somehow central witnesses in this case is obvious spin.

**B.   A Conflict Between the Circuit Courts of Appeal Is Irrelevant When Determining If Plaintiff's Action Should be Transferred Pursuant to 28 U.S.C. § 1404(a).**

As set forth in the introduction to this Reply Brief, the COGSA package limitation appears to have no benefit to Norfolk Southern considering the high number of packages involved. For this reason, any conflict between Circuit Courts of Appeal with respect to application of the COGSA limitation is wholly irrelevant and not a factor when determining if plaintiff's action should be transferred pursuant to 28 U.S.C. § 1404(a).

5

Plaintiff insurance company makes an extraordinary effort in its opposition to Defendant's motion to attempt to show that the motive for the motion is "forum shopping." In light of Defendant's so-called "forum shopping," Plaintiff argues that the interests of justice require that this Court not transfer Plaintiff insurance companies' action to the North District of Georgia where the precedent of the Eleventh Circuit Court of Appeals is unfavorable to them.

Curiously, Plaintiff also argued that the Southern District of New York should remain the venue because Second Circuit precedent favors the interests of their insureds, thereby effectively conceding that forum shopping was the insurance companies' sole motive for bringing their action here. These allegations, arguments and concessions ignore that, as a matter of law, any forum shopping by Plaintiff or Defendant simply does not matter.

The Supreme Court has held that the fact that the substantive law in the alternative forum may be less favorable to the plaintiffs than in the chosen forum does not justify the denial of a motion to dismiss or transfer under 28 U.S.C. § 1404(a) for *forum non conveniens* in diversity jurisdiction cases. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 248-52 & n. 19 (1981). The Supreme Court also has held that when deciding motions to transfer a diversity action pursuant to 28 U.S.C. 1404(a), "the decision to transfer venue . . . should turn on considerations of convenience and the interest of justice *rather than on the possible prejudice resulting from a change of law.*" Ferens v. John Deere Co., 494 U.S. 516, 523 (1990) (emphasis added). In Piper Aircraft Co. v. Reyno, the Court recognized a sole exception that a change of law unfavorable to a plaintiff may be considered when a *dismissal* requires plaintiff to bring an action in a foreign jurisdiction and "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." Piper Aircraft Co., 454 U.S. at 254.

The so-called conflict between the Second Circuit and other Circuits identified by Plaintiff should not be a consideration when deciding Defendant's motion to transfer. It is merely an intercircuit conflict that arises from divergent decisions about federal law by different Courts of Appeal.

Intercircuit conflicts are an inherent feature of a unified federal judiciary with thirteen intermediate appellate courts. See, e.g., United States v. Atlantic Research Corp., 127 S. Ct. 2331, 2334 (2007) (resolving conflict between Courts of Appeal regarding federal Superfund Act); EC Term of Years Trust v. United States, 127 S. Ct. 1763, 1767 (2007) (resolving conflict between Courts of Appeals regarding Tax Code); Travelers Casualty and Surety Co. v. Pacific Gas and Electric Co., 127 S. Ct. 1199, 1204 (2007) (resolving conflict between Courts of Appeals regarding Bankruptcy Code). If a conflict exists and results in a decision against a plaintiff or defendant, the party's remedy is to petition the Supreme Court to resolve the intercircuit conflict. Sup. Ct. R. 10(a) (2007) (eff. Oct. 1, 2007) (That a "United States court of appeals has entered a decision in conflict with the decision of another United States court of appeals on the same important matter" is a compelling reason that justifies grant of writ of certiorari by Supreme Court.); Sup. Ct. R. 10(a) (2005) (same).

C.  **Supreme Court decision in Van Dusen v. Barrack Does not Bar Transfer of Plaintiffs' Action to More Convenient Forum.**

Plaintiffs' reliance on Van Dusen v. Barrack, 376 U. S. 612 (1964) is to no avail. In Van Dusen, the Supreme Court decided that, in a diversity matter where the Erie Doctrine applied, a plaintiff's action should be governed by the state law of the original venue when the action is transferred, pursuant to 28. U.S.C. 1404(a). According to the Court, Congress intended 28 U.S.C. § 1404(a) to be a "federal judicial housekeeping measure, dealing with the placement of litigation in the federal courts and generally intended, on the basis of convenience and fairness,

simply to authorize a change of courtrooms." Van Dusen v. Barrack, 376 U. S. at 636-37. Based on this Congressional intent, the Court held that generally a transfer of venue should not be accompanied by a change of applicable state law. Id. The Supreme Court reversed the decision of the Court of Appeals that (i) under Section 1404(a) and the Erie Doctrine state law of the new venue would govern a plaintiff's action and (ii) transfer was precluded when state law differed in the original and new venues and the transfer resulted in a change of law unfavorable to plaintiff. Van Dusen v. Barrack, 376 U. S. at 615, 620-22, 625-30.

In the instant case, Plaintiff does not invoke the diversity jurisdiction of this Court, and state law does not govern its action. Therefore, the decision in Van Dusen does not apply. Plaintiff has brought an action pursuant to the Carmack Amendment, a federal statute, and federal law will determine Plaintiff's rights, if any, under that statute. There is no potential conflict between the laws of two sovereign states that may work to Plaintiff's detriment. In such a case where more than one Circuit Court of Appeal, but not the Supreme Court, have interpreted a federal statute, plaintiffs and defendants both face the risk that the statute will be interpreted "incorrectly" and in a manner unfavorable to them. The remedy for that risk is not refusal to transfer an action pursuant to Section 1404(a) if the transfer is warranted. The proper remedy is for the aggrieved party to appeal if the federal statute is not interpreted correctly.

Plaintiff also cites the decision in Jordache Enterprises, Inc. v.Brobeck, Phleger & Harrison, No. 92 CIV. 9002 (KMW), 1994 U.S. Dist. LEXIS 2551 (S.D.N.Y. March 7, 1994) for the proposition that Defendant's purported "forum shopping" should bar transfer pursuant to 28 U.S.C. 1404(a). The decision in Jordache Enterprises simply has nothing to do with the issue before this Court.

The Court in <u>Jordache Enterprises</u> faced dueling motions concerning venue in which

(i) defendants sought dismissal, or transfer to the Central District of California, pursuant to 28 U.S.C. § 1406(a), because of improper venue, and

(ii) plaintiffs sought transfer under 28 U.S.C. 1404(a).

Plaintiff sought transfer under Section 1404(a) because, arguably, the decision in <u>Van Dusen v. Barrack</u> would require the California court to apply New York's statute of limitations, which was more favorable to Plaintiff than the California statute.

The Court in <u>Jordache Enterprises</u> correctly rejected the idea that plaintiffs could file an action in the wrong venue, where state law favored it, and have the action transferred to the proper venue where plaintiffs would gain advantage from the favorable law of a state whose law might not apply otherwise. According to the Court, "allowing plaintiff[s] to benefit from bringing an action in impermissible forum would encourage plaintiffs to file actions wherever state law is most advantageous, regardless of whether the forum is proper." <u>Jordache Enterprises</u>, 1994 U.S. Dist. LEXIS 2551 at *20 n.9.

The Court in this matter does not face a situation where plaintiff seeks to have favorable state law apply to its action by filing an action in a District Court without venue. In fact, transfer to Ohio would not even provide Norfolk Southern with favorable federal law as the COGSA limitation of liability doesn't benefit Norfolk Southern due to the high number of packages involved. Even if the Circuit split with respect to the application of the COGSA limitation would benefit Norfolk Southern, intercircuit conflicts are inherent in the federal judicial system and may disfavor either party to litigation. When an intercircuit conflict may impact a plaintiff's action, it should not be able to use its power to select venue as a means to pick the most favorable rule of law and have that choice stand as sacrosanct. Instead, the factors routinely

applied by the Courts when resolving motions to transfer pursuant to Section 1404(a) should be weighed without considering the intercircuit conflict. If transfer is appropriate, and if the conflict leads to a decision against the Plaintiff, it may seek redress before the appropriate Circuit Court of Appeals, and if unsuccessful there, it may petition the Supreme Court to review the appellate decision. This is the remedy for every other plaintiff and defendant.

**D.     Cases Denying Motion To Transfer Because The Parties Agreed To Forum Selection Clause Have No Bearing in This Matter Because No Such Contractual Agreement Exists Between Plaintiff and Defendant.**

The Plaintiff's attempts to characterize the special venue provision of the Carmack Amendment as a "forum selection agreement" is absurd, at best. Plaintiff brought its action against Defendant pursuant to the Carmack Amendment, alleging that it should be granted an award for damages to freight. Plaintiff's allegations nevertheless control the determination of whether venue is proper in the Southern District of New York.

The Carmack Amendment includes a special venue provision that limits venue against a delivering rail carrier, which is not a carrier that allegedly caused a loss, to:

> the judicial district in which the principal place of business of the person bringing the action is located if the delivering carrier operates a railroad or a route through such judicial district, or in the judicial district in which the point of destination is located.

49 U.S.C. § 11706(d) (2)(A)(ii). It appears that Plaintiff makes sufficient allegations to establish the Southern District of New York as a proper venue under 49 U.S.C. § 11706(d) (2)(A)(ii), in that they allege Plaintiff has a principal place of business, at least for its U.S. operations, in the District, and that Norfolk Southern operates a railroad or route there. The allegations in the Complaint also establish that the Northern District of Ohio would be a proper venue because the points of destination are within the District. 49 U.S.C. § 11706(d) (2)(A)(ii).

Plaintiff acknowledges that 49 U.S.C. § 11706(d)(2)(A) is the applicable venue statute and points to no forum selection provision in any agreement between Plaintiff and Defendant. Nevertheless, Plaintiff argues the statute is a "forum selection agreement" that bars transfer pursuant to 28 U.S.C. 1404(a) unless "the contractual forum will be 'so gravely difficult and convenient' that" Defendant will be deprived of its day in court.

Plaintiff's argument is without any factual or legal basis and should be rejected summarily. Plaintiff cites to no decision holding that 49 U.S.C. § 11706(d)(2)(A) should be treated as a "forum selection clause" that in most cases bars the grant of a motion to transfer pursuant to 28 U.S.C. § 1404(a), and Defendant has found no such decisions.

Furthermore, the decisions cited by Plaintiffs have nothing to do with 49 U.S.C. § 11706(d)(2)(A) and cannot be read to support Plaintiff's baseless argument. In the one decision cited by Plaintiff, the Court merely held that a valid forum selection clause, agreed to by a plaintiff and defendant, should be enforced despite a defendant's motion to transfer under Section 1404(a). See Orix Credit Alliance, Inc. v. Brown, No. 93 Civ. 1019 (SWK), 1994 U.S. Dist. LEXIS 10206 at *17-*20 (July 27, 1994) (Court denied motion to transfer in light of contractual forum selection clause and defendant's inability to establish selected forum was a "gravely difficult and inconvenient" venue).

The second decision cited by Plaintiff, The Bremen v. Zapata Off-shore Co., 407 U.S. 1 (1972), simply sets the standard for determining whether a contractual forum selection clause should be enforced despite a contracting party's claim of forum non conveniens. It is an admiralty matter that has nothing to do with 49 U.S.C. § 11706(d)(2)(A).

E.  **Cases Cited By Plaintiff Do Not Support The Proposition That Transfer May Be Denied Because of Ease of Travel to New York Or Alternatives to Live Trial Testimony.**

Plaintiff cites numerous decisions in support of the argument that the motion to transfer should be denied because it is convenient to travel by air to New York, potential witnesses are part of "an extensive national network" and alternatives exist to witnesses' live appearance at trial. After a cursory examination, it is clear that the cited decisions do not support Plaintiff's contention. Therefore, the Court should disregard this meritless argument.

The decision in Burlington Industries, Inc. v. Salem International Co., 645 F. Supp. 872 (S.D.N.Y. 1986) is the first that Plaintiff cites to support its argument about the ease of air travel. While the Court noted that defendants should be able to travel easily between New York and Falls Church, VA, the Court made that note in denying defendants' motion to transfer because the defendants agreed in a contract that New York would be the forum for any disputes with plaintiff. Burlington Industries, Inc. v. Salem International Co., 645 F. Supp. at 876. It thus is clear that the Court in Burlington Industries denied transfer because of defendants' agreement, and their inability to establish New York as a "gravely difficult and inconvenient" venue as required by The Bremen v. Zapata Off-Shore. The ease of air travel to New York is not the rationale for the decision.

The decision in Aerotel, Ltd. v. Sprint Corp., 100 F. Supp. 189 (S.D.N.Y. 2000) is the next decision that Plaintiff cites, quoting its reference to "an extensive national network " and suggesting that as part of such a network marine surveyors, who are potential witness, must travel frequently to New York. Unfortunately for Plaintiff, the rationale for the Aerotel, Ltd. v. Sprint Corp. decision is not that potential witnesses were part of a national network and regularly traveled to New York. The Court did not refer to any evidence that potential witnesses outside

of the state traveled regularly to New York. Instead, the Court denied defendant's motion because defendant did not establish the location of potential witnesses and Court assumed witnesses were in New York because plaintiffs alleged that defendant sold in New York products and services infringing plaintiff's patented invention. Aerotel, Ltd. v. Sprint Corp., 100 F. Supp. 189, 197 (S.D.N.Y. 2000).

The Magistrate's recommended decision in Kelly v. MD Buyline, 2 F. Supp. 2d 428 (S.D.N.Y. 1998) is another case that Plaintiff cites in arguing that because it is easy for witnesses to travel by air to New York, Plaintiff's action should not be transferred to Georgia. Although the Magistrate in MD Buyline refers to the ease of flying to New York, 2 F. Supp. 2d 428, 441 n. 9, ease of travel is not the rationale for the recommended decision. The Magistrate in MD Buyline recommended denial of transfer because it appeared that a venue change from New York to Texas would only shift inconvenience from defendants' witnesses to plaintiffs' witnesses. Kelly v. MD Buyline, 2 F. Supp. 2d at 441. In the instant case, transfer of venue would not result in a mere shifting of inconvenience. The freight at issue never came within hundreds of miles of New York; its point of destination was Ohio, where the freight was involved in a derailment, inspected multiple times, delivered, surveyed, and assessed for salvage.

Plaintiff also cites Duncan v. International Business Machines, Corp., No. 95 Civ. 1785 (MBM)(MHD), 1996 U.S. Dist. LEXIS 18549 (S.D.N.Y. December 13, 1996). Although the Court discussed that videotaped depositions may be used to show jurors testimony of unavailable witnesses, this fact is not the justification for the decision in Duncan v. IBM. Rather, the Court denied a motion to transfer venue to Texas after its detailed analysis showed that operative facts occurred in the original venue New York and the alternative venue Texas, both venues were inconvenient for some witnesses, and courts in New York or Texas would have no power to

subpoena some non-party witnesses. <u>Duncan v. International Business Machines, Corp.</u>, 1996 U.S. Dist. LEXIS 18549 at *8-*15. For the reasons already set forth in Defendant's Memorandum of Law and discussed further below, a detailed analysis should lead this Court to the opposite conclusion that transfer is warranted in the instant case.

In <u>Manu International, S.A. v. Avon Products, Inc.</u>, 641 F.2d 62 (2d Cir. 1981), a decision cited by Plaintiff in regard to ease of travel to New York, the Court of Appeals reversed a dismissal, on the grounds of forum non conveniens, that would have required Manu International to pursue its action in Taiwan. <u>Manu International, S.A. v. Avon Products, Inc.</u>, 641 F.2d at 63. The Court of Appeals decision, which involved dismissal and not transfer pursuant to Section 1404(a), has nothing to do with Defendant's motion to transfer this matter from one federal courtroom to another within the federal judicial system.

Finally, Plaintiff cites in regard to ease of travel a decision in which the Court granted transfer of venue from New York to Hawaii in the lawsuit of a New York resident who slipped and fell in Volcanoes National Park while vacationing in the Aloha State. <u>Schechter v. Tauck Tours, Inc.</u>, 17 F. Supp. 2d 255 (S.D.N.Y. 1998). The Court held that transfer was appropriate for reasons including that the Court in New York had no power to compel appearance at trial by at least two witnesses in Hawaii and that defendant Tauck Tours could not bring in New York a third-party action against another potentially liable party. <u>Schechter v. Tauck Tours, Inc.</u>, 17 F. Supp. 2d at 261-263. The decision does not discuss at all the ease of travel to New York and does not in any way support Plaintiff's argument for denial of transfer. What's more, travel to Columbus, Ohio does not present any particular hardship, although other than Plaintiff's counsel, it is unclear who would have to actually travel to Ohio.

F.      **<u>Other Decisions Cited by Plaintiff Fails to Support Denial of the Motion to Transfer</u>**

In its Memorandum, Plaintiff also provided a series of string citations in support of its argument that the motion to transfer should be denied. Plaintiff's counsel admits that the "string citations have been simply taken from" *M. Silberberg, Civil Parties in the Southern District of New York.*" Plaintiff's Memorandum at 8 n.7. Upon a cursory examination of the decisions in Plaintiff's string citations, it is clear that the decisions have no relevance to and do not support Plaintiff's arguments for denial of the motion to transfer.

The decisions in Plaintiff's string citations include numerous decisions in which the Court denied transfer because it would only shift inconvenience of venue from moving party's witnesses to non-moving party's witnesses. See <u>Astor Holdings v. Roski</u>, No. 01 Civ. 1905 (GEL), 2002 U.S. Dist. LEXIS 758 at *41-*42. (S.D.N.Y. January 17, 2002) (Court denied transfer because it would only shift inconvenience from defendants' witnesses to plaintiffs' witnesses); <u>Reciprocal Merchandising Services v. All Advertising Associates, Inc.</u> No. 88 Civ. 8055 (SWK), 1990 U.S. Dist. LEXIS 4202 at *7-*9, (S.D.N.Y. April 13, 1990) (Court denied motion to transfer where defendant showed only that its proposed venue was more convenient to defendants' witnesses); <u>Steinberg & Lyman v. Takacs</u>, 690 F. Supp. 263, 266 (S.D.N.Y. 1988)(same); <u>Motown Record Corporation v. Mary Jane Girls, Inc.</u>, 660 F. Supp. 174, 175 (S.D.N.Y. 1987) (Court denied transfer where original venue, New York City, was more convenient to plaintiff's nine potential witnesses despite defendant's argument that Western District of New York was more convenient for two of its witnesses; other factors disfavored transfer); <u>Kelly v. MD Buyline</u>, 2 F. Supp. 2d 428, 441 (S.D.N.Y. 1998) (Magistrate recommended denial of transfer because venue change would only shift inconvenience from defendants' witnesses to plaintiffs' witnesses).

Third, Plaintiff cites at least one decision in which the ability of the District Court to compel out-of-state witnesses to appear at trial was a key consideration. See Schwartz v. R.H. Macy's Inc., 791 F. Supp. 94, 95 (S.D.N.Y. 1992) (Court denied transfer in part because its power to subpoena witnesses within 100 miles would allow it to compel witnesses in New Jersey to appear at trial in New York City). Plaintiff also cites one decision in which the issue before the Court was dismissal, not transfer pursuant to 28 U.S.C. 1404(a). See Piper Aircraft v. Reyno, 454 U.S. 235 (1982) (Defendants sought dismissal on grounds of forum non conveniens; Alternative venue was Scotland). Finally, Plaintiff cites decisions in which the court transferred venue. Hall v. South Orange, 89 F. Supp. 2d 488, 493-95 (S.D.N.Y. 2000) (Court granted venue transfer to New Jersey when substantial part of events relating to plaintiffs' action occurred in New Jersey); ZPC 2000, Inc. v. SCA Group, Inc., 86 F. Supp. 2d 274, 278-80 (S.D.N.Y. 2000) (Court granted venue transfer to Illinois when operative facts occurred there and it was more convenient venue for parties and witnesses).

For the reasons explained in Defendant's Motion to Transfer and below, the instant case does not fall into these categories of decisions that Plaintiff cites in a string.

### G. Plaintiff Has Implicitly Admitted That The Southern District of Ohio Is A More Convenient Venue For Trial.

Defendant has shown that the Southern District of Ohio is a more convenient forum for trial of Plaintiff's action because it was the location for numerous operative facts, including the derailment, the clean up of the derailment, multiple surveys, delivery of the damaged freight belonging to Plaintiff's insureds, and inspection of the damaged freight. See, e.g., Hall v. South Orange, 89 F. Supp. 2d 488, 493-95 (S.D.N.Y. 2000) (Court granted venue transfer to New Jersey when substantial part of events relating to plaintiffs' action occurred there) (cited by Plaintiffs in memorandum of law in opposition to transfer); ZPC 2000, Inc. v. SCA Group, Inc.,

86 F. Supp. 2d 274, 278-80 (S.D.N.Y. 2000) (Court granted venue transfer to Illinois when operative facts occurred there) (cited by Plaintiffs in memorandum of law in opposition to transfer).

Plaintiff does not dispute that these facts, which weigh in favor of transfer, all occurred in the Southern District of Ohio. Additionally, Plaintiff has failed to identify any operative facts that occurred in the Southern District of New York, and it is undisputed that the rail transportation at issue never came close to passing through New York. This absence of operative facts in the Southern District of New York makes Plaintiff's venue choice of "little weight." ZPC 2000, Inc. v. SCA Group, Inc., 86 F. Supp. 2d at 280 ("when a plaintiff brings a suit in a forum that has no material connection with the action," Plaintiff's choice of forum "should receive little weight"). See also Gerling Am. Ins. Co. v. FMC Corp., 1998 U.S. Dist. LEXIS 11080 at *14 (S.D.N.Y. 1998); Nieves v. American Airlines, 700 F. Supp. 769, 772 (S.D.N.Y. 1988).

Defendant also has identified potential witnesses who can be compelled by subpoena to appear at trial in Ohio, but who are beyond the reach of the subpoena power of this Court. All of these individuals have first hand knowledge of the condition of the freight at destination, which is a crucial element in Plaintiff's claim. In contrast, Plaintiff has completely failed to identify a single non-party witness in New York who would be beyond the subpoena power of the Ohio court and who has first hand information concerning any element of Plaintiffs' claim.[3]

---

[3] Plaintiff identified employees of Nipponkoa. These "witnesses" do not have personal knowledge about the extent of damage to the freight because they only hired the surveyors and communicated with the actual fact witnesses located in Ohio. Declaration of Sharvon Morrison ¶ 2.

17

## CONCLUSION

For the reasons set forth in this Reply Brief, and Defendant's Memorandum of Law in Support of Motion to Transfer Pursuant to 28 U.S.C. § 1404(a), the interests of justice require that the motion be granted and venue transferred from the Southern District of New York, which has no nexus to any operative facts, to the Southern District of Ohio, where the freight at issue derailed, was inspected, surveyed, and assessed for salvage by individuals who are not subject to this Court's subpoena power.

                                  Respectfully submitted,

                                  **KEENAN COHEN & HOWARD P.C.**

By:    /s/ Jeffrey D. Cohen
        Jeffrey D. Cohen, Esquire (*pro hac vice*)
        One Pitcairn Place, Suite 2400
        165 Township Line Road
        Jenkintown, PA 19046
        Telephone: (215) 609-1110
        Facsimile:  (215) 609-1117

        Attorneys for Defendants
        Norfolk Southern Railway Co.

**OF COUNSEL**

Shawn P. Kelly, Esquire
**KELLY, RODE & KELLY**
330 Old County Road, Suite 305
Mineola, NY 11501
Telephone:   (516) 739-0400
Facsimile:    (516) 739-0431

Dated: June 23, 2008

## CERTIFICATE OF SERVICE

I, the undersigned counsel, hereby certify that on June 23, 2008 a true and correct copy of the foregoing Defendant's Reply Brief in Support of Motion to Transfer Venue Pursuant to 28 U.S.C. 1404(a) was filed electronically. Notice of this filing will be sent to the following party, listed below, by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

        David T. Maloof, Esquire
        Thomas M. Eagan, Esquire
        MALOOF BROWNE & EAGAN LLC
        411 Theodore Fremd Avenue, Suite 190
        Rye, New York 10580-1411


By:   /s/ Jeffrey D. Cohen
       Jeffrey D. Cohen, Esquire